IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAMOND O. BLAKLEY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**OSAGE COUNTY JAIL,**<br>**(FNU) DUNN, JERRY (LNU),**<br>**And PHIL (LNU),**<br><br>**Defendants.** | **Case No.  15-cv -3054-DDC-DJW** |

### MEMORANDUM AND ORDER

This matter comes before the court on pro se plaintiff Damond O. Blakley's Motion for Judgment (Doc. 62), Motion to Suppress (Doc. 73), "Motion to Show Admission of Guilt" (Doc. 81), "Motion to Dismiss Osage County Defendant Phillip Shepard's Memorandum in Support of His Motion for Summary Judgment" (Doc. 86), "Motion to Show Material Evidence for Discovery at Trial" (Doc. 88), and Motion for Summary Judgment (Doc. 89), and defendant Officer Shepard's Motion for Summary Judgment (Doc. 70).  All parties have responded and replied to the pending motions and, where they have not, the time to do so has passed.  For reasons explained below, the court denies plaintiff's Motion to Suppress, grants Officer Shepard's Motion for Summary Judgment, and denies plaintiff's remaining motions as moot.

### I.     Background

Plaintiff currently is detained in the Shawnee County, Kansas Jail.  Before the Shawnee County Jail, and at the times relevant to his Complaint, plaintiff was detained in the Osage County, Kansas Jail.

1

Plaintiff names four defendants in his Complaint: (1) the Osage County Jail, (2) Osage County Sheriff Laurie Dunn, (3) Osage County Jail Supervisor Sergeant Gerald Nitcher, and (4) Osage County Correctional Officer Philip Shepard. The court's screening order dismissed plaintiff's claim against the Osage County Jail. Doc. 6. The court later dismissed plaintiff's claims against Sheriff Dunn and Sergeant Nitcher. Docs. 47, 55. The only remaining claim is plaintiff's Eighth Amendment claim against Officer Shepard. Officer Shepard now moves for summary judgment.

II. **Plaintiff's Motion to Suppress *Martinez* Report (Doc. 73) and Officer Shepard's Motion for Summary Judgment (Doc. 70)**

For the purpose of Officer Shepard's Summary Judgment Motion, the court takes the facts, where uncontroverted, from the parties' briefs[1] as well as the *Martinez* Report (Doc. 77). Plaintiff filed a Motion to Suppress the *Martinez* Report because, he contends, his "past criminal history has no bearing toward this civil suit." Doc. 73 at 1. Indeed, plaintiff's remaining claim presents a civil claim, alleging that Officer Shepard violated his Eighth Amendment rights when he failed to get plaintiff medical treatment. "When the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond, [the court] should, and will, treat the portion of the *Martinez* report describing the policies or procedures like a written document that has been attached to plaintiff's complaint." *Hall v. Bellmon*, 935 F.2d 1106, 1112–13 (10th Cir. 1991). The *Martinez* report aids the court in "its broad reading of the pro se litigants pleadings . . . by supplementing a plaintiff's often inadequate description of the practices that he contends are unconstitutional." *Id.* at 1112. Plaintiff has had an opportunity to

---

[1] Doc. 79 is titled Motion to Respond. The court construes Doc. 79 as plaintiff's Response to Officer Shepard's Motion for Summary Judgment (Doc. 70).

respond to the *Martinez* report. And, although he moved to suppress the report, he did not dispute the description of the policies and procedures contained in the report. So, the court denies plaintiff's Motion to Suppress and considers the facts in the *Martinez* report when making its decision. The court turns to Officer Shepard's Motion for Summary Judgment because, if granted, all of plaintiff's motions are moot.

### A. Facts

Plaintiff arrived at the Osage County Jail on January 20, 2015. On January 26, 2015, plaintiff submitted a Medical Request Form for a "knot" "on [his] left side lower back." Doc. 77 at 13. Plaintiff visited Dr. Seeman on February 11, 2015. During the visit, plaintiff requested to be taken off all of his medications. Some of these medications treated plaintiff's anxiety and depression. Dr. Seeman agreed, and the Osage County Jail staff stopped administering these medications to plaintiff.

On February 12, 2015, plaintiff began to experience pain in his chest and heart. Plaintiff sought help from Jailer Phil ("Officer Shepard") while Officer Shepard was on his routine jail check. Officer Shepard separated plaintiff from other inmates by moving him to the jail's holding area for observation, so he could question him about his symptoms. Officer Shepard asked plaintiff if he was experiencing chest pain, and plaintiff said that he was not, but that he did not feel right.[2] Plaintiff described a "fluttering" in his chest and stated that he wanted to go to the hospital. *Id.* at 14. Officer Shepard did not think that plaintiff was exhibiting any symptoms of a serious medical condition. Officer Shepard observed that plaintiff was breathing and speaking normally, that plaintiff's skin color appeared to be normal, and that plaintiff did not

---

[2] In some of his motions, plaintiff asserts that he told Officer Shepard that his heart and chest hurt. *See e.g.*, Doc. 62 at 1 ("Plaintiff told . . . Defendant Shepard on the evening of the 12th of February [that] his chest/heart was hurting."). But in his Response, plaintiff does not controvert Officer Shepard's factual contention that plaintiff did not report any chest pain.

3

seem to be in any distress. Officer Shepard also knew that plaintiff had stopped taking all of his medications, including his anti-anxiety medications. Officer Shepard told plaintiff that what he was feeling was "only in his head," that "it was stress," and that he would be alright. *Id.* at 4. Officer Shepard let plaintiff fill out a medical request form when he returned to his cell. Doc. 68-1 at 16. According to plaintiff, he was lightheaded the next day.

Plaintiff saw a physician on February 25, 2015. Plaintiff filed this lawsuit three weeks later. Plaintiff's suit alleges that Officer Shepard's failure to provide him with medical care on February 12, 2015 amounted to a violation of his Eighth Amendment rights. Plaintiff asserts that Officer Shepard should have gotten help for him, and that his failure to do so constituted mental and physical abuse. Plaintiff contends that his pain was so great that he was lightheaded for a day after Officer Shepard looked at him, and that Officer Shepard disregarded "an excessive risk to [his] health [and] safety." Doc. 79 at 1.

In his Response, plaintiff contends that he has been suffering from his heart problems for over a year. His symptoms include feeling dizzy and weak. Plaintiff attached documents to his Response, including "Progress Notes" from a visit to the Cotton-O'Neil Heart Center where he saw Dr. Kevin Bernd. The Progress Notes state that plaintiff visited Dr. Bernd on March 4, 2016. The Progress Notes also state that plaintiff reported to Dr. Bernd that he started to develop heart palpitations in February 2015, and that they occurred every three to four days. The Progress Notes describe plaintiff's report that the palpitations usually resolve on their own. The notes also reveal that another physician, Dr. Seeman, tested plaintiff and found that he has been experiencing episodes of supraventricular tachycardia (SVT).

### B. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing

*Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### C. Analysis

Officer Shepard asserts several arguments in support of his motion for summary judgment. First, Officer Shepard contends that he did not violate plaintiff's Eighth Amendment rights. Second, even if he violated plaintiff's Eighth Amendment rights, Officer Shepard contends that he is entitled to qualified immunity on plaintiff's claims.

#### 1. Plaintiff's Eighth Amendment Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes" a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Similarly, "an inadvertent failure to provide adequate medical care cannot be said to constitute" an Eighth

Amendment violation. *Id.* at 105.  A prisoner must have suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

Deliberate indifference has both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)).  "To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Id.* (quoting *Kikumura*, 461 F.3d at 1293).

Because plaintiff brings his this case pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006);  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court cannot assume the role of advocate for the pro se plaintiff.  *Hall*, 935 F.2d at 1110 (noting that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant").

### a.  Eighth Amendment Analysis:  Objective Component

To prevail on an Eighth Amendment claim, the prisoner "must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  The Tenth Circuit has held that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted).  A delay in medical treatment "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id.* (citation

7

omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.* (quoting *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001)).

In his Response, plaintiff contends that Officer Shepard delayed his medical treatment for "days." Doc. 79 at 2. But plaintiff has not met the objective standard to show that Officer Shepard violated his Eighth Amendment rights. This is because plaintiff has not shown that his condition was "so obvious that even a lay person" easily would have recognized the necessity for a doctor's attention. *See Mata*, 427 F.3d at 751. When speaking to Officer Shepard, plaintiff did not display any physical symptoms of a serious medical condition. Officer Shepard reported that plaintiff was breathing normally, that his skin appeared normal, and that he did not exhibit any other physical symptoms of a medical condition.

Also, plaintiff has visited a physician since his interaction with Officer Shepard. The physician never diagnosed plaintiff with any serious medical condition rising to the level of a "lifelong handicap, permanent loss, or considerable pain" at these visits. *See id.* The medical "Progress Notes" that plaintiff attaches to his Response are consistent with this observation. Doc. 79 at 6. Dr. Seeman's notes, which are dated more than a year after the events giving rise to plaintiff's claims, state that plaintiff started developing heart palpitations every three to four days while in jail, but that they usually resolved on their own without interventions. The notes also describe plaintiff's lightheadedness. These symptoms cannot be said to amount to a lifelong handicap, permanent loss, or considerable pain.

The court takes plaintiff's allegations seriously and does not diminish any discomfort his heart palpitations, lightheadedness, and SVT conditions have caused him. But the law is clear: a delay in medical treatment only constitutes an Eighth Amendment violation when it results in

8

substantial harm. The uncontroverted facts here do not demonstrate that plaintiff suffered substantial harm sufficient for an Eighth Amendment violation.

### b. Eighth Amendment Analysis: Subjective Component

Even if plaintiff could prevail on the objective component, plaintiff has not made the required showing for the subjective component of an Eighth Amendment violation. "The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751 (citing *Estelle*, 429 U.S. at 106). This prong is satisfied when the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). "Whether the prison official had the requisite knowledge of a substantial risk to an inmate's health or safety 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). "A prison official who serves as a gatekeeper for other medical personnel capable of treating the condition" may be liable under the deliberate indifference standard if he or she "delays or refuses to fulfill that gatekeeper role." *Mata*, 427 F.3d at 751 (citations omitted).

Nothing in the parties' briefs or the *Martinez* report shows that Officer Shepard knew of an excessive risk to plaintiff's safety. As discussed above, Officer Shepard did not observe any signs that plaintiff was suffering from a serious medical condition because plaintiff was breathing normally, his skin appeared normal, and he informed Officer Shepard that he was not experiencing any chest pain. Officer Shepard also knew that plaintiff had stopped taking his anti-anxiety medications the same day he asked Officer Shepard for help. Officer Shepard concluded from this circumstantial evidence that plaintiff was experiencing minor symptoms

9

from stopping his medication. The uncontroverted facts demonstrate that Officer Shepard did not know about an excessive risk to plaintiff's safety.

And, to the extent Officer Shepard was aware of plaintiff's discomfort, it is clear from the uncontroverted facts that Officer Shepard did not disregard plaintiff. When plaintiff informed Officer Shepard that he needed medical attention, Officer Shepard took action and moved him to a separate holding cell. While plaintiff was in the holding cell, Officer Shepard spoke with plaintiff and observed his symptoms. Eventually, Officer Shepard concluded that there was no risk to plaintiff's health or safety, and sent plaintiff back to his cell.

### 2. Qualified Immunity

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights" which a "reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To resolve an official's qualified immunity claims, the court must decide whether the plaintiff has alleged facts that demonstrate "a violation of a constitutional right." *Id.* The court must also decide whether the right at issue was "'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated by Pearson v. Callahan*, 555 U.S. 223 (2009). District courts may use their discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

The court begins with the first prong of the qualified immunity analysis. As concluded in the above section, the uncontroverted facts do not demonstrate a violation of a constitutional right. The court thus does not need to reach the second prong of the analysis to conclude that Officer Shepard is protected by qualified immunity.

10

### 3. Official Capacity Claim

Officer Shepard also contends that if plaintiff asserts any official capacity claim against him, it fails as a matter of law. Even construing plaintiff's pro se claims liberally, the court finds that plaintiff has not asserted any official capacity claims.

Because plaintiff has not demonstrated that Officer Shepard violated his Eighth Amendment rights, and because Officer Shepard is protected by qualified immunity, the court grants Officer Shepard's Motion for Summary Judgment.

### D. Plaintiff's Motions

Because the court grants Officer Shepard's Motion for Summary Judgment, plaintiff's Motion for Judgment (Doc. 62), "Motion to Show Admission of Guilt" (Doc. 81), "Motion to Dismiss Osage County Defendant Phillip Shepard's Memorandum in Support of His Motion for Summary Judgment" (Doc. 86), "Motion to Show Material Evidence Discovery at Trial" (Doc. 88), and Motion for Summary Judgment (Doc. 89) are denied as moot.

In each of his motions, plaintiff describes the facts underlying his claim—that he complained to Officer Shepard about heart and chest pain on February 12, 2015 and Officer Shepard told him he "look[ed] alright." *See, e.g.*, Doc. 62 at 1. But, as discussed above, even viewing the facts in the light most favorable to plaintiff, Officer Shepard's conduct did not violate plaintiff's Eighth Amendment rights. Further, Officer Shepard is protected by qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Suppress (Doc. 73) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** Officer Shepard's Motion for Summary Judgment (Doc. 70) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Judgment (Doc. 62), "Motion to Show Admission of Guilt" (Doc. 81), "Motion to Dismiss Osage County Defendant Phillip Shepard's Memorandum in Support of His Motion for Summary Judgment" (Doc. 86), "Motion to Show Material Evidence Discovery at Trial" (Doc. 88), and Motion for Summary Judgment (Doc. 89) are denied as moot.

**IT IS SO ORDERED.**

**Dated this 17th day of March, 2017, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
